# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **GREG COLEMAN**, | ) |
| Plaintiff, | ) 1:17-cv-00528 |
| v. | ) Judge Gary Feinerman |
| **RANDY PFISTER**, sued in his individual capacity; **GHALIAH OBAISI**, Independent Executor and substituted as a party defendant for Saleh Obaisi, M.D.; **WEXFORD HEALTH SOURCES, INC.**; **JERMIAGH DALY**, sued in his individual capacity; **NICHOLAS LAMB**, sued in his individual capacity; **KENNETH HARRIS**, sued in his individual capacity; **RICARDO TEJEDA**, sued in his individual capacity; **NOEL ACOSTA**, sued in his individual capacity; and **JOHN DOES**, currently unknown employees of the Illinois Department of Corrections or Wexford Health Sources, Inc., | ) |
| Defendants. | ) |

## JOINT STATUS REPORT REGARDING SETTLEMENT

Pursuant to the Court's July 17, 2020 Minute Entry (ECF No. 262), Plaintiff Greg Coleman, Defendants Randy Pfister, Jermiagh Daly, Nicholas Lamb, Kenneth Harris, Ricardo Tejeda, and Noel Acosta (the "IDOC Defendants"), and Defendants Wexford Health Sources, Inc. ("Wexford") and Ghaliah Obaisi (collectively with Wexford, the "Wexford Defendants") hereby submit this Joint Status Report Regarding Settlement.

**I. Settlement of Plaintiff's Claims Against the IDOC Defendants**

Joint Statement by Plaintiff and the IDOC Defendants: On July 8, 2020, Plaintiff and the IDOC Defendants agreed on a settlement amount to resolve Plaintiff's claims against the IDOC Defendants. Counsel for Plaintiff and counsel for the IDOC Defendants have exchanged drafts and discussed the written settlement agreement by phone. Counsel for Plaintiff sent counsel for

the IDOC Defendants a revised draft of the written settlement agreement on July 21, 2020; counsel for the IDOC Defendants is considering that draft. Counsel for Plaintiff and counsel for the IDOC Defendants believe that they are making progress and are close to agreeing on the form of the written settlement agreement.

Finally, to date, the parties have not been able to find Plaintiff's social security number, which counsel for the IDOC Defendants states is needed to process the payment of the settlement amount to Plaintiff. The parties are working to resolve this issue.

## II. Settlement of Plaintiff's Claims Against the Wexford Defendants

<u>Plaintiff's Statement</u>: On June 26, 2020, Plaintiff and the Wexford Defendants agreed on a settlement amount to resolve Plaintiff's claims against the Wexford Defendants. On July 1, 2020, counsel for Plaintiff and counsel for the Wexford Defendants agreed on the form of a written settlement agreement. On that same day, the Wexford Defendants signed the written settlement agreement, and Plaintiff's counsel sent the written settlement agreement to Plaintiff.

Thereafter, Plaintiff's counsel became aware of an issue with respect to the terms in the written settlement agreement concerning the method of payment. Specifically, while the written settlement agreement reflects that the Wexford Defendants are to provide Plaintiff's counsel with a single check made out to Plaintiff, Cook County Jail—the facility where Plaintiff currently is incarcerated—allows inmates to deposit into their trust accounts only cashier's checks, and any such cashier's check cannot exceed $1,000. Plaintiff's counsel asked Cook County Jail to make an exception to this practice, but Cook County Jail refused to do so.

Plaintiff's counsel explained these issues to counsel for the Wexford Defendants, and Plaintiff's counsel proposed that the Wexford Defendants pay the settlement amount through a number of cashier's checks—this would resolve both the requirement for a cashier's check and the $1,000 cap. Although Plaintiff made this proposal on July 16, 2020, and followed up on July

17 and July 21, 2020, to date, the Wexford Defendants have not responded if they will agree to do so. This should be an easy fix so Plaintiff does not understand why the Wexford Defendants will not agree, let alone even respond

The written settlement agreement is not effective on its face until Plaintiff provides the Wexford Defendants with an executed copy of the written settlement agreement; Plaintiff cannot do so until the payment issues have been resolved.

Plaintiff respectfully requests the Court's assistance in resolving this issue.

The Wexford Defendants' Statement: The Wexford Defendants are in agreement with the Plaintiff that this matter has fully settled. Moreover, the Wexford Defendants will uphold their end of the obligation as expressed in the Settlement Agreement, already executed by the Wexford Defendants. That obligation, as Plaintiff notes, is to furnish a single check directed to the Plaintiff. The Wexford Defendants inquired as to Plaintiff's social security number in order to issue him the check. The Plaintiff was unable to provide his social security number, and the Wexford Defendants are unaware if the Plaintiff has made any attempt to acquire his social security number. The Wexford Defendants were not informed that the Plaintiff does not have his social security number until after the parties agreed to the terms of the Agreement, after the Wexford Defendants executed the Agreement, and after they furnished the agreement to the Plaintiff for signature.

Plaintiff's recent demand that the Wexford Defendants provide ten (10) cashier's checks is unreasonable and is not contemplated in the agreed-to settlement agreement.

The Wexford Defendants propose that Plaintiff's counsel's firm – Jenner & Block LLP – provide its Tax Identification number, so that the Wexford Defendants may issue a single check

3

addressed to both Plaintiff and his counsel. Plaintiff's counsel may hold the check in escrow and reimburse the Plaintiff from this account as appropriate.

Plaintiff's Response: Plaintiff does not agree that this matter is fully settled. While counsel for the parties agreed on the form of a written settlement agreement, there is no effective settlement until Plaintiff delivers an executed copy of the written settlement agreement to the Wexford Defendants. The Wexford Defendants do not—and indeed cannot—dispute this point. As noted above, Plaintiff cannot provide an executed copy of the written settlement agreement until the payment issues are resolved.

On the morning that this Joint Status Report was due—after not responding for nearly a week—the Wexford Defendants rejected Plaintiff's proposal that the Wexford Defendants make the settlement payment by cashier's checks. First, the Wexford Defendants claim that paying through cashier's checks is "unreasonable," but they have never provided any basis for this contention. Wexford is a large, private corporation that must have the ability to procure cashier's checks. Second, the Wexford Defendants claim that payment by cashier's checks is not "contemplated" by the form of the written settlement agreement, but then go on to propose a different method of payment that also is not contemplated by the form of the written settlement agreement.

The Wexford Defendants' proposal is to have Jenner & Block LLP act as a bank in this matter, notwithstanding that Jenner & Block's attorneys were appointed in this matter on a pro bono basis. Jenner & Block, not being a plaintiff's contingency fee firm, generally does not do this for any of its clients. To do so requires special management approval, and entails a number of financial risks for Jenner & Block. If the Wexford Defendants want this matter settled, they should make the payment in a manner that is acceptable to Plaintiff.

4

Wexford Defendants' Reply:

Plaintiff's position that the matter is not fully settled is incorrect and contrary to established law. Whether a settlement contract is binding, even if directed toward a purely federal claim, is an issue governed by the law of the state in which the parties executed the contract. *See Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002). Accordingly, Illinois law applies to determine whether the parties entered into a binding and enforceable contract.

Oral settlement agreements are enforceable under Illinois law if "there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement." *Wilson v. Wilson*, 46 F.3d 660, 600 (7th Cir. 1994)(quoting *Brewer v. National R.R. Passenger Corp.*, 628 N.E.2d 331, 335 (Ill. App. Ct. 1993)). The essential terms must be "definite and certain" so that a court can ascertain the parties' agreement from the stated terms and provisions. *Quinlan v. Stouffe*, 823 N.E.2d 597, 603 (Ill. App. Ct. 2005). The agreement must be sufficiently definite with respect to all material terms. *Id.* at 1061. Material terms are sufficiently definite when they enable a court to ascertain the agreement between the parties. See *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016). "Illinois follows the objective theory of intent whereby the written records of the parties' actions—rather than their subjective mental processes—drive the inquiry." *Id.*

Moreover, in *Tidwell v. Asselmeier*, 3:16-cv-00041-SMY (S.D. Ill.), the Plaintiff, Cleother Tidwell, and Wexford Health Sources, Inc. came to an oral settlement agreement. The Plaintiff then tried to back out of the agreement after the material terms were presented to him and agreed to. Magistrate Judge Williams issued a Report and Recommendation (R&R) upholding the Agreement, and finding the essential terms of the agreement were "definite and

5

certain." *See Tidwell*, 16-41, ECF No. 269, p. 5. This R&R was upheld and enforced by the District Judge, Staci M. Yandle. *Id.* at ECF No. 271. Like in *Tidwell*, the Parties here memorialized the settlement agreement – which the Plaintiff cannot realistically dispute since the Release language was affirmatively agreed upon. There was no agreement to issue ten cashier's checks at unspecified times in the Release. In *Tidwell*, that court enforced the Parties' Agreement even though the Parties only had an *oral* agreement – here, the Agreement is even memorialized *in writing* and agreed to by all counsel, lending even further support to the Wexford Defendants' position.

    In the instant case, the Parties affirmatively agreed on the Release language, specifically calling for one check to be issued to the Plaintiff. The Wexford Defendants have offered to issue the check directly to Plaintiff's counsel's firm – with receipt of its Tax Identification No. – in order to ensure that the check enters his hands. This is because the Plaintiff cannot provide his social security number to process payment directly to him. Plaintiff unreasonably asks the Wexford Defendants to complete the tedious task of issuing ten (10) cashier's checks at unspecified times. This not only is a burden, it will bring up serious logistical issues and likely create conflict or confusion down the road. For instance, Plaintiff may dispute that he did not receive one or more checks, likely to cause additional, future court intervention. After all, the Release, in paragraph 10, clearly states, in pertinent part, that "[n]o promise has been made to pay or give Plaintiff or the Wexford Defendants any greater or further consideration other than as stated in this Release." The Wexford Defendants will provide the Court with the Release (under seal) if the Court so requests, in accordance with paragraph 15 of the Release's confidentiality requirement. Plaintiff had the opportunity to object to language in the Release before it was agreed to, but did not do so. Therefore, the simple solution is to issue the single check to the

6

Plaintiff's attorneys, and they will provide their client the money in the manner they see fit. If the Plaintiff's counsel sees that issuing ten cashier's checks is a simple task, then they certainly will have no trouble doing so.

Perhaps most importantly, the Plaintiff in *Tidwell* argued that providing his social security number was not contemplated at the time the Parties were negotiating the settlement agreement and release. *Tidwell*, ECF No. 269, p. 7. Indeed, he claimed that he did not have his social security number, just as the Plaintiff in the instant case states. *Id*. The Court found that the requirement to provide a social security number is not a material term. *Id*. "That being said, the lack of a social security number should not preclude payment/settlement. **If Tidwell has trouble getting his social security number, the payment could be made to his attorney and the attorney could distribute the money to Tidwell.**" *Id*. (emphasis added). "Thus, to the undersigned this is not a material term of the settlement agreement, and it should not preclude enforcement." *Id*. This is exactly how this Court should handle this matter.

Finally, Judge Williams stated that under Illinois law, the fact that the document, including the release, memorializing the settlement agreement has not been signed does not render the settlement void. *Id*. at p. 8, citing *Kalman v. Bertacchi*, 373 N.E.2d 550, 556 (Ill. App. Ct. 1978). Thus, a meeting of the minds has occurred and the parties entered into an enforceable settlement agreement. The Wexford Defendants respectfully request that the Court allow the Wexford Defendants to issue a check to the Plaintiff's counsel's firm so that they may distribute the funds to the plaintiff as they see fit.

Dated: July 22, 2020

Respectfully submitted,

**Counsel for Plaintiff Greg Coleman**

By: /s/ Stephen R. Brown

Debbie L. Berman
Stephen R. Brown
Matthew T. Gordon
Regina M. Wood
Huiyi Chen
Michael F. Linden
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: 312 923-2764
Facsimile: 312 527-0484
dberman@jenner.com
stephenbrown@jenner.com
mgordon@jenner.com
rwood@jenner.com
hchen@jenner.com
mlinden@jenner.com

**Counsel for IDOC Defendants**

By: /s/ Andrew O'Donnell

Andrew O'Donnell
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
AODonnell@atg.state.il.us


**Counsel for Wexford Defendants**

By: /s/ Brett R. Furmanski

Matthew Weller
Ronald E. Neroda
Brett R. Furmanski
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
mweller@cassiday.com
rneroda@cassiday.com
bfurmanski@cassiday.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this date a true copy of the foregoing was served via ECF on counsel for Ghaliah Obaisi, Wexford Health Sources, Inc., Randy Pfister, Jermiagh Daly, Nicholas Lamb, Kenneth Harris, Ricardo Tejeda, and Noel Acosta:

Matthew Weller, mweller@cassiday.com

Ronald Neroda, rneroda@cassiday.com

Brett Furmanski, bfurmanski@cassiday.com

Andrew O'Donnell, AODonnell@atg.state.il.us

Dated: July 22, 2020

By: /s/ Stephen R. Brown
Stephen R. Brown
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: 312 840-7282
Facsimile: 312 527-0484
stephenbrown@jenner.com