# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **GREG COLEMAN**, | ) |
| | ) |
| Plaintiff, | ) 1:17-cv-00528 |
| | ) |
| v. | ) |
| | ) Judge Gary Feinerman |
| **RANDY PFISTER**, sued in his individual capacity; **GHALIAH OBAISI**, Independent Executor and substituted as a party defendant for Saleh Obaisi, M.D.; **WEXFORD HEALTH SOURCES, INC.**; **JERMIAGH DALY**, sued in his individual capacity; **NICHOLAS LAMB**, sued in his individual capacity; **KENNETH HARRIS**, sued in his individual capacity; **RICARDO TEJEDA**, sued in his individual capacity; **NOEL ACOSTA**, sued in his individual capacity; and **JOHN DOES**, currently unknown employees of the Illinois Department of Corrections or Wexford Health Sources, Inc., | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## SECOND JOINT STATUS REPORT REGARDING SETTLEMENT

Pursuant to the Court's July 23, 2020 Minute Entry (ECF No. 264), Plaintiff Greg Coleman, Defendants Randy Pfister, Jermiagh Daly, Nicholas Lamb, Kenneth Harris, Ricardo Tejeda, and Noel Acosta (the "IDOC Defendants"), and Defendants Wexford Health Sources, Inc. ("Wexford") and Ghaliah Obaisi (collectively with Wexford, the "Wexford Defendants") hereby submit this Second Joint Status Report Regarding Settlement.

**I.    Settlement of Plaintiff's Claims Against the IDOC Defendants**

<u>Joint Statement by Plaintiff and the IDOC Defendants</u>:  The parties continue to work cooperatively to resolve the few remaining issues with respect to the written settlement agreement, including locating Plaintiff's social security number in order to facilitate payment of the settlement

amount to Plaintiff. Counsel for Plaintiff and counsel for the IDOC Defendants believe that they are making progress and are close to finalizing the written settlement agreement.

## II. Settlement of Plaintiff's Claims Against the Wexford Defendants

<u>Plaintiff's Statement</u>: The Wexford Defendants have made clear that they have no interest in compromise. Although the Court ordered the parties to "attempt to find a sensible and mutually agreeable solution" (Minute Entry, ECF No. 264) for the payment issues identified in the First Joint Status Report, when counsel for the parties spoke by phone on July 27, 2020, counsel for the Wexford Defendants began the discussion by stating Wexford had not changed its position, and that Wexford was sticking to the position that it took in the First Joint Status Report. Even before the discussion began, the Wexford Defendants had ruled out any possibility of compromise.

Notwithstanding the Wexford Defendants' position, Plaintiff proposed compromises to address the Wexford Defendants' stated concern that, if they were to pay via cashier's checks, "Plaintiff may dispute that he did not receive one or more checks, likely to cause additional, future court intervention." (*See* 1st JSR re Settlement at 6, ECF No. 263.) Although this concern is complete speculation, Plaintiff's counsel proposed during the parties' July 27, 2020 discussion to revise the paragraph in the written settlement agreement regarding payment to state that the Wexford Defendants' only obligation would be to deliver the cashier's checks to Plaintiff's counsel. In a follow-up email on July 27, 2020, Plaintiff's counsel reminded the Wexford Defendants that payment via wire transfer (through Western Union, Money Gram, or accesscorrections) also would be an option, and Plaintiff again offered to rewrite the paragraph concerning payment in the written settlement agreement to limit any risks to the Wexford Defendants. The Wexford Defendants rejected these compromises.

Instead, the Wexford Defendants have stubbornly clung to their position that Jenner & Block must act as a bank and accept payment on Plaintiff's behalf. This is inconsistent with both

the letter and the spirit of the written settlement agreement—the written settlement agreement contemplates that the Wexford Defendants will deliver to Jenner & Block a check made out to Plaintiff, meaning that Jenner & Block will act as a mail box for the settlement payment, not a bank.[1]

While the Wexford Defendants claim that paying Plaintiff via cashier's checks or via wire transfer would be "tedious," they have never provided any basis for that contention. Wexford is a large, private corporation, and it likely would require Wexford to do no more than place a call to its bank to arrange for the cashier's checks or wire transfer through one of the services accepted by Cook County Jail. This is a simple and easy solution. On the other hand, as Plaintiff explained in the First Joint Status Report, Jenner & Block generally does not accept funds on behalf of its clients because doing so entails a number of financial risks. For example, if there were an outstanding lien against Plaintiff and Jenner & Block holds the settlement money and then distributes it to Plaintiff, such a lienholder may attempt to recover from Jenner & Block all or part of the money that it distributed to Plaintiff. In addition, Jenner & Block bears the risk that a bank can subsequently claw back payments, even after they have cleared, if there is a subsequent problem with the source of funds. Jenner & Block, whose attorneys were appointed in this matter on a pro bono basis, should not be required to make an exception for this case to spare the Wexford Defendants some additional, de minimis legwork.

The Wexford Defendants have made clear that they have no interest in a compromise. Plaintiff respectfully requests that the Court order the Wexford Defendants to pay the settlement

---

[1] The Wexford Defendants continue to argue that the case is fully settled, including by, for example, inserting three pages of legal briefing into the parties' First Joint Status Report. If the Court invites briefing on this point, Plaintiff will provide his full response. For the purpose of this filing, however, Plaintiff states that the Wexford Defendants are wrong, including because they are relying on inapposite case law and are ignoring the undisputed fact that the written settlement agreement—by its own terms—is ***not*** effective.

3

amount through ten cashier's checks or through a wire service approved by Cook County Jail. Plaintiff remains willing to make any reasonable, mutually agreeable revisions to the paragraph in the written settlement agreement concerning the Wexford Defendants' payment of the settlement amount to Plaintiff.

<u>Wexford's Statement</u>: The Plaintiff accuses the Wexford Defendants of hindering or impeding settlement payment to the Plaintiff in this case. However, the impediments that have arisen since a final settlement was agreed to by both parties has come from the Plaintiff's end.

The Wexford Defendants are being more than reasonable and have offered to go beyond what the mutually agreed to and binding Settlement Agreement calls for. The terms of the Settlement Agreement explicitly require that "the Wexford Defendants shall deliver a check payable to Greg Coleman for the Settlement Amount to: Debbie L. Berman, Jenner & Block LLP, 353 North Clark Street, Chicago, IL 60654." The express language in the afore-quoted payee provision was initially drafted and proposed by Plaintiff. Despite the unambiguous nature of this provision, the Wexford Defendants have agreed to make the settlement draft payable to Plaintiff and Jenner & Block (and/or Jenner's Trust Fund Account).

Once deposited into Jenner & Block's account, Jenner can determine how to disperse the funds to its client. This seems like a very reasonable approach to solve Plaintiff's apparent predicament, one that the Wexford Defendants did nothing to cause or contribute to, a predicament that very likely existed before the payee provision was proposed by Plaintiff, and before the mutually agreed to Settlement Agreement was executed by both Defendants and tendered to Plaintiff.

The Court asked the parties in its previous minute order (ECF No. 264) to come to a sensible solution. The solution that the Wexford Defendants have proposed is sensible and fair.

Plaintiff repeatedly inquires about wire transfers and/or sending ten (10) separate cashier's checks to be delivered at unspecified times. These options were proposed both <u>before</u> the Court's last minute entry, and <u>after</u> said entry – as such, the Plaintiff has failed to propose any other solution than previously contemplated.

The Plaintiff also indicated to the Court in the last joint status report that the Parties' settlement is not yet effective. While the Wexford Defendants did not intend to fully brief this issue in the last report, the Wexford Defendants merely pointed out that there are no material terms at issue (only how payment will be delivered, which is immaterial to whether the settlement is complete), so Plaintiff's underhanded statements that there is not even actual settlement reached is ludicrous. The Parties came to an agreement to pay Plaintiff a monetary sum by check. It was only after the Parties had a clear meeting of the minds on the material terms of settlement (which is all Illinois requires), and after both Defendants tendered fully executed copies of the Settlement Agreement, that the Plaintiff indicated that he could not provide his social security number so that the Wexford Defendants could furnish the check payable to him. The Parties' disagreement on the method of settlement payment has no effect on its enforcement.

This matter is quite simple – because the Plaintiff cannot provide his social security number, the next best step is to instead issue a check to the Plaintiff's firm to be placed in a separate account for the Plaintiff, which is undoubtedly a common practice. The Plaintiff's "solution" of multiple cashier checks, wire transfers, etc. is certainly not called for in the Settlement Agreement and is convoluted, tedious, risky, and unreasonable. The Defendants are simply asking for Jenner & Block to provide its tax identification number so that the check can be sent to the firm, and then the Plaintiff's attorneys can provide their client the funds in the way they see fit.

The Wexford Defendants respectfully request that the Court allow the Wexford Defendants to issue one, single check to be made to the Plaintiff and his counsel, and that his counsel shall disperse the funds to the Plaintiff in the method appropriate and in compliance with Cook County Jail's procedures.

Dated: July 29, 2020

Respectfully submitted,

**Counsel for Plaintiff Greg Coleman**

By: /s/ Stephen R. Brown

Debbie L. Berman
Stephen R. Brown
Matthew T. Gordon
Regina M. Wood
Huiyi Chen
Michael F. Linden
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: 312 923-2764
Facsimile: 312 527-0484
dberman@jenner.com
stephenbrown@jenner.com
mgordon@jenner.com
rwood@jenner.com
hchen@jenner.com
mlinden@jenner.com

**Counsel for IDOC Defendants**

By: /s/ Andrew O'Donnell

Andrew O'Donnell
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois 60601
AODonnell@atg.state.il.us

**Counsel for Wexford Defendants**

By: /s/ Brett R. Furmanski

Matthew Weller
Ronald E. Neroda
Brett R. Furmanski
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
mweller@cassiday.com
rneroda@cassiday.com
bfurmanski@cassiday.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 29, 2020, a true copy of the foregoing was served via ECF on counsel for Ghaliah Obaisi, Wexford Health Sources, Inc., Randy Pfister, Jermiagh Daly, Nicholas Lamb, Kenneth Harris, Ricardo Tejeda, and Noel Acosta:

Matthew Weller, mweller@cassiday.com

Ronald Neroda, rneroda@cassiday.com

Brett Furmanski, bfurmanski@cassiday.com

Andrew O'Donnell, AODonnell@atg.state.il.us

By: /s/ Stephen R. Brown
Stephen R. Brown
JENNER & BLOCK LLP
353 N. Clark St.
Chicago, Illinois 60654
Telephone: 312 840-7282
Facsimile: 312 527-0484
stephenbrown@jenner.com